**Clinton BIRST and Judith Birst, Plaintiffs, Appellants and Cross–Appellees,**

**v.**

**Wayne SANSTEAD, in his official capacity as Superintendent of the North Dakota Department of Public Instruction, Defendant, Appellee and Cross–Appellant,**

**and**

**Karen Kautzmann, in her official capacity as Morton County Superintendent of Schools, Defendant.**

Civ. No. 920181.

Supreme Court of North Dakota.

Dec. 14, 1992.

Michael P. Farris (argued), Paeonian Springs, VA, and Gregory L. Lange (appearance), Richardson & Lange, Hazen, for plaintiffs, appellants, and cross-appellees Clinton Birst and Judith Birst.

JoAnn C. Toth (argued), Asst. Atty. Gen., Atty. Gen.'s Office, Bismarck, for defendant, appellee and cross-appellant Wayne Sanstead.

ERICKSTAD, Chief Justice.

Clinton Birst and Judith Birst (the Birsts) appeal from an order and declaratory judgment entered by the District Court for Morton County. The Birsts appeal from a part of the district court's decision requiring them to make their home, also used to educate their children, comply with all municipal and state health, fire, and safety laws applicable to private school buildings. Wayne Sanstead, in his official capacity as Superintendent of the North Dakota Department of Public Instruction, and Karen Kautzmann, in her official capacity as Morton County Superintendent of Schools (school officials), cross-appeal from part of the same order and declaratory judgment. The part the school officials appeal from allows parents educating their children at home to elect either the private school exception or the home-based instruction exception to the compulsory school attendance laws, Chapter 15–34.1, N.D.C.C. We affirm in part and reverse in part.

Until 1989, there was no specific home-based instruction exception to the compulsory school attendance laws [1] in North Dakota. Therefore, parents educating their children at home had to adhere to the private school exception, which reads:

---

1. The compulsory school attendance statute reads as follows:

"*Compulsory attendance.* Every parent, guardian, or other person who resides within any school district, or who resides upon any government base or installation without any school district, and has control over any educable child of an age of seven years to sixteen years who does not fall under the provisions of sections 15–34.1–02 or 15–34.1–03, shall send or take such child to a public school each year during the entire time such school is in session."

Section 15–34.1–01, N.D.C.C.

"*Compulsory attendance—Exceptions.* The parent, guardian, or other person having control of a child required to attend school by the provisions of this chapter shall be excused by the school board from causing the child to attend school whenever it shall be shown to the satisfaction of the board, subject to appeal as provided by law, that one of the following reasons exists:

1. That the child is in attendance for the same length of time at a parochial or private school approved by the county superintendent of schools and the superintendent of public instruction. No such school shall be approved unless the teachers therein are legally certified in the state of North Dakota in accordance with section 15–41–25 and chapter 15–36, the subjects offered are in accordance with sections 15–38–07, 15–41–06, and 15–41–24, and such school is in compliance with all municipal and state health, fire, and safety laws."

Section 15–34.1–03(1), N.D.C.C.

Although this Court has never addressed the issue directly, it has acquiesced in the notion that allowing parents to educate their children at home under the private school exception is a legal method of avoiding prosecution for violation of the compulsory school attendance laws of Section 15–34.1–01, N.D.C.C.[2] *See State v. Melin,* 428 N.W.2d 227 (N.D.), *cert. denied,* 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 357 (1988) (children taught in the home must be taught by an individual with a valid teacher's certificate and this requirement does not infringe upon the parents' right of free exercise of religion); *State v. Anderson,* 427 N.W.2d 316 (N.D.), *cert. denied,* 488 U.S. 965, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988) (requiring the teacher of children in a home school to have a teacher's certificate does not violate the establishment clause); *State v. Patzer,* 382 N.W.2d 631 (N.D.), *cert. denied,* 479 U.S. 825, 107 S.Ct. 99, 93 L.Ed.2d 50 (1986) (a teacher certification requirement for home schools is among the least intrusive methods available to satisfy the government's interest and does not violate the parents' right to free exercise of religion). *See also State v. Brewer,* 444 N.W.2d 923 (N.D.1989); *State v. Toman,* 436 N.W.2d 10 (N.D.1989).

The United States Court of Appeals for the Eighth Circuit agrees.

"As North Dakota has no legislation specifically dealing with home schools, they are considered private schools under this statute [Section 15–34.1–03(1), N.D.C.C.], and as such they cannot be approved by the state unless the teachers are legally certified."

*Anderson v. Schultz,* 871 F.2d 762, 763–64 (8th Cir.1989).

The Birsts have educated their children at home since 1983. During the time period within which the Birsts have utilized their home school, they contend that they have met all requirements of the private school exception. More importantly, the North Dakota Department of Public Instruction informed the Birsts on different occasions during the period from 1983 to 1989 that it approved of their home school as a private school.[3]

"It is my pleasure to notify you that the Faith Christian Elementary School has been approved *as a private elementary school to provide instruction to your children* in grades 2 and 7 for the 1988–89 school year. All private and parochial elementary schools are jointly approved by the State Superintendent of Public Instruction and the County Superintendent of Schools.

"In order for an elementary school to operate legally in North Dakota, the school must be in compliance with the following requirements:

1. All teachers shall be legally certified in accordance with Chapter 15–36 of the North Dakota Century Code.

---

**2.** Parents violating the compulsory school attendance law, prior to 1989, were penalized under Section 15–34.1–05, N.D.C.C., which declared that "[a]ny person failing to comply with the requirements of this chapter is guilty of an infraction." This statute, however, was temporarily repealed by the 1989 amendment of Chapter 15–34.1, N.D.C.C.

**3.** In the record on appeal there are various letters from the North Dakota Department of Public Instruction informing the Birsts that their home school was approved as a private school for a particular school year. A sample of the language used follows:

"Dear Ms. Birst:

On July 6, 1989, an amendment to Chapter 15–34.1, N.D.C.C., took effect which specifically addresses situations where school-aged children receive their education at home. The amendment adds a home-based instruction exception to Section 15–34.1–03, N.D.C.C.[4] This amendment provoked the school officials to send the Birsts correspondence directing them to comply with the home-based instruction amendment rather than the private school exception they abided by for over six years.[5]

Subsequent to the receipt of these letters, the Birsts filed an action in the District Court for Morton County for a declaratory judgment and an injunction. The Birsts contended that because the legislature has not expressly stated that all home schools must comply with the requirements of the new amendment, nor specifically repealed or amended their privilege to continue as before, they are free to elect either the home-based instruction exception or the private school exception to the compulsory

2. The subjects offered are in accordance with Section 15–38–07 of the North Dakota Century Code.

3. The school term shall be the 180–day term along with the other provisions of Section 15–47–33 of the North Dakota Century Code.

4. The school shall comply with all municipal and state health, fire and safety laws. "Schools approved to provide home education wherein only children of the instructor(s) are taught *are not required to provide documentation that they are in compliance with all municipal and state health, fire and safety laws.*" (Emphasis added).

4. The amendment is effective from July 6, 1989, through June 30, 1993, and subsequent to that date it is ineffective, absent further legislative action. It reads as follows:

*"Home-based instruction.* Home-based instruction is an educational program for students based in the child's home and supervised by the child's parent or parents. A parent is qualified to supervise a program of home-based instruction if the parent is certified or certifiable to teach in North Dakota; has a high school education or has received a general educational development certificate and is supervised by a certificated teacher employed either by the public school district in which the parent resides or, if requested by the parent, by a state-approved private or parochial school; or has passed the national teacher exam given in North Dakota, or in any other state if North Dakota does not offer such a test. Home-based instruction must include those subjects required to be taught in accordance with sections 15–38–07, 15–41–06, and 15–41–24 and must be provided for at least four hours per day for a minimum of one hundred seventy-five days per year. Every parent supervising home-based instruction shall maintain an annual record of courses taken by the child and the child's academic progress assessments, including any standardized achievement test results. A parent shall furnish these records to any school to which the child may transfer upon request of the superintendent or other administrator of that public school district. A parent intending to supervise home-based instruction for the par-

ent's child shall file an annual statement with the superintendent of the public school district in which the child resides. If the school district does not employ a local school superintendent, the statement must be filed with the county superintendent of schools for the the [sic] county of the child's residence. The statement must be filed at least thirty days prior to the beginning of the school semester for which the parent requests an exemption except when residency of the child is not established by that date. If residency has not been established, the statement must be filed within thirty days of the establishment of residency within the district. The statement must include:

1. The names and addresses of the parent who will supervise and the child who will receive home-based instruction;

2. The date of birth and grade level of each child;

3. The intention of the parent to supervise home-based instruction;

4. The qualifications of the parent who will supervise the home-based instruction;

5. A list of courses or extracurricular activities in which the child intends to participate in the public school district; and

6. An oath or affirmation that the parent will comply with all provisions of this chapter."

Section 15–34.1–03 (amended 1989).

5. The Birsts initially received a letter from the North Dakota Department of Public Instruction on March 13, 1990. It informed them that the Legislative Assembly, by passing the home-based instruction amendment, had "delineated between private 'schools' and home-based instruction.... [S]ince there are new separate exemptions, instruction which is home-based must be classified as such." The letter went on to explain to the Birsts that the Department could not "approve home-based instruction as a 'school.'" Over one year later, on October 2, 1991, the Birsts received a letter from the Morton County Superintendent of Schools requesting the Birsts to comply with the home-based instruction exception to compulsory school attendance rather than the private school exception.

school attendance laws. In the district court action, the school officials countered the Birsts' argument by asserting that the Birsts, as well as all other families practicing home education, have to comply with the home-based instruction exception. In the alternative, the school officials contended that, if the Birsts and others like them are allowed to utilize the private school exception, then they must satisfy all of the municipal and state health, fire, and safety laws applicable to private school buildings.

In its order and declaratory judgment, the district court determined that the Birsts are free to elect between the home-based instruction exception and the private school exception. However, should they choose the private school exception, they must comply with all municipal and state health, fire, and safety laws applicable to private school buildings. This appeal and cross-appeal followed.

■ We will consider the issue of election of exceptions first. As the Birsts assert, the home-based instruction exception does not refer to or conflict with the private school exception. The statute as amended does not specifically say that the home-based instruction exception is the *exclusive* method by which families with home schools may proceed to avoid the compulsory school attendance laws. Nor does it expressly limit the options which a family educating children at home may utilize. The amendment did not alter or limit the use of the subsection concerning private schools. Additionally, the private school exception and the home-based instruction exception are not repugnant when read together, nor do they facially conflict.

In light of the record and admission during oral argument that the authorities allowed home school families to operate under the private school exception prior to the amendment, we assume the Legislative Assembly was aware, when enacting the amendment, of the long use of the private school exception by home school families, of the appropriate administrative agency's acceptance of that use, and of this Court's decisions which give deference to such administrative construction when we are re-quired to construe a statute whose meaning is unclear on its face. *See Delorme v. North Dakota Dep't of Human Services* (Civil No. 920062 at p. 3, filed 11/24/92), 492 N.W.2d 585, 587 (N.D.1992) ("courts are to give great weight to an agency's construction of a statutory scheme it is entrusted to administer"); *Johnson v. Wells County Water Resource Bd.*, 410 N.W.2d 525, 529 (N.D.1987) (this Court will give deference to the long-standing construction of a statute by an administrative agency); *Walker v. Weilenman*, 143 N.W.2d 689, 693 (N.D.1966) (courts will give weight to a practical and contemporaneous construction placed upon a statute by the agency charged with its administration).

In *Tharaldson v. Unsatisfied Judgment Fund*, 225 N.W.2d 39 (N.D.1974), we said: "The legislature will not be held to have changed a law it did not have under consideration while enacting a later law, unless the terms of the subsequent act are so inconsistent with the provisions of the prior law that they cannot stand together." *Id.* at 45 (*quoting* Sands' Sutherland Statutory Construction, Vol. 1A, Section 22.13, at 139 and 149 (4th Ed.1972)). *See Rodgers v. Freborg*, 240 N.W.2d 63, 66 (N.D.1976); *Adams County v. Smith*, 74 N.D. 621, 23 N.W.2d 873, 877 (1946).

In essence, the school officials are asking us to give new meaning to a part of this statute, when the part they ask us to give new meaning to was not explicitly amended. If we were to do as requested, we would be confronted with the well-established rule that precludes us from amending or repealing legislation by implication.

"Implied amendments and implied repeals are not favored:

'An implied amendment is an act which purports to be independent of, but which in substance alters, modifies, or adds to a prior act. To be effective, an amendment of a prior act ordinarily must be expressed. Amendments by implication, like repeals by implication, are not favored and will not be upheld in doubtful cases.'"

*Tharaldson v. Unsatisfied Judgment Fund,* 225 N.W.2d at 45 (*quoting* Sands' Sutherland Statutory Construction, Vol. 1A, Section 22.13, at 139 and 149 (4th Ed. 1972)). *See City of Fargo v. Little Brown Jug,* 468 N.W.2d 392 (N.D.1991); *State of North Dakota by Workmen's Compensation Bureau v. Clary,* 389 N.W.2d 347 (N.D.1986); *Walsvik v. Brandel,* 298 N.W.2d 375 (N.D.1980); *Grace Lutheran Church v. North Dakota Employment Sec. Bureau,* 294 N.W.2d 767 (N.D.1980); *City of Grand Forks v. Bd. of County Commr's of Grand Forks,* 284 N.W.2d 420 (N.D.1979); *Kessler v. Bd. of Educ. of the City of Fessenden,* 87 N.W.2d 743 (N.D. 1958); *Coulter v. Ramberg,* 79 N.D. 208, 55 N.W.2d 516 (1952).

■ The practice of repealing or amending a piece of legislation by implication is disfavored in North Dakota and there is an established presumption against it.

"At the outset, we should note that repeals or amendments of statutes by implication are not favored and to overcome the presumption against an implied repeal or implied amendment it must be shown that conflict between the two statutes is irreconcilable. *Walsvik v. Brandel,* 298 N.W.2d 375, 377 (N.D.1980)."

*State of North Dakota by the Workmen's Compensation Bureau v. Clary,* 389 N.W.2d at 349. *See City of Grand Forks v. Bd. of County Comm'rs of Grand Forks,* 284 N.W.2d 420; *Kessler v. Bd. of Educ. of the City of Fessenden,* 87 N.W.2d 743.

In addition to the presumption against repealing or amending legislation, we are also under a statutory directive to harmonize different statutes passed by the legislature and give them full effect. *See* Section 1–02–07, N.D.C.C.[6] This Court's prior decisions illustrate our allegiance to the harmonizing provision. "Statutes relating to the same subject matter shall be construed together and should be harmonized, if possible, to give meaningful effect to each, without rendering one or the other useless." *City of Fargo v. Little Brown Jug,* 468 N.W.2d at 395 (*quoting Westman v. North Dakota Workers Compensation Bureau,* 459 N.W.2d 540, 541 (N.D.1990)).

Nothing contained within the language of the home-based instruction exception and the private school exception indicates to us that the presumption against implied amendment or repeal has been overcome. The two provisions do not conflict with or refer to each other. Neither explains that it is the exclusive exception to compulsory school attendance laws for a family with a home school. In harmonizing the two provisions, we must give them both full effect. In light of the above principles, we conclude that families educating their children at home are free to elect between the private school exception and the new home-based instruction exception to the compulsory school attendance laws. The new exception is not the exclusive method available for home school families. We affirm the district court's order and declaratory judgment on this issue.

■ The second issue on appeal is whether or not home schools using the private school exception must comply with all municipal and state health, fire, and safety laws applicable to private school buildings. We hold that they do not, and reverse the district court on this issue.

Prior to this case and the amendment under consideration, the Superintendent of the North Dakota Department of Public Instruction sent the Birsts correspondence informing them that they need not comply with the health, fire, and safety laws applicable to private school buildings. *See supra* note 3. Notwithstanding this fact, the school officials now argue that private school health, fire, and safety laws apply to

6. The statute reads:
    "*Particular controls general.* Whenever a general provision in a statute is in conflict with a special provision in the same or in another statute, *the two must be construed, if possible, so that effect may be given to both provisions,* but if the conflict between the two provisions is irreconcilable the special provision must prevail and must be construed as an exception to the general provision, unless the general provision is enacted later and it is the manifest legislative intent that such general provision shall prevail."
    Section 1–02–07, N.D.C.C. (emphasis added).

the Birsts in their home school. The Birsts contend that the health, fire, and safety laws and regulations applicable to private family homes should apply to their home school.

Section 18–12–25, N.D.C.C., is helpful in our quest to determine which health, fire, and safety laws apply to home schools. It enumerates the reference data to be used when applying the fire prevention code for school buildings in North Dakota. In relevant part, it reads:

> "*Reference data.* The latest edition of the following data must be used as reference and as an aid in the interpretation of this chapter:

> \* \* \* \* \* \*

> 2. The National Fire Codes—national fire protection association."

*Id.*

Our research efforts disclose that the National Fire Protection Association released its most recent 101 Life Safety Code in 1991. Chapter 11 of the N.F.P.A.Code is entitled "Existing Educational Occupancies." In that chapter, an educational occupancy is defined as follows:

> "Educational occupancies shall include all buildings used for educational purposes through the twelfth grade by 6 or more persons for four or more hours per day or more than twelve hours per week."

Section 11–1.4.1, N.F.P.A. 101 Life Safety Code (1991).[7]

In oral argument, the Birsts informed us that they educate only their own children in their home, and that they have four children. This was not disputed by the school officials. A further reading of Chapter 11 of the N.F.P.A.Code discloses that a building is not considered a "school" per se when the instruction occurring within the building is merely incidental to some other occupancy.

> "In cases where instruction is incidental to some other occupancy, the section of this *Code* governing such other occupancy shall apply."

Section 11–1.4.3, N.F.P.A. 101 Life Safety Code (1991).[8]

This fits the Birsts. The primary use of their dwelling house is as a home, not a school. Because they live in their home, they educate their children there and not vice versa. The instruction of their children is incidental to the primary purpose of the occupancy of the dwelling house, which is the utilization of it as a home. The part of the N.F.P.A.Code regulating private school buildings does not apply to them. Instead, they must comply with regulations for a one-family dwelling. *See* Chapter 21, N.F.P.A. 101 Life Safety Code (1991). The Birsts apparently meet those requirements. We therefore find the district court in error on this issue.

For the foregoing reasons, we affirm that part of the district court's order and declaratory judgment which permitted the Birsts to elect to comply with the private school exception to the compulsory school attendance laws; we reverse that part of the district court's order and declaratory judgment which required the Birsts to comply with private school health, fire, and safety laws and regulations. The Birsts are entitled on remand to the ordinary costs on appeal.[9]

VANDE WALLE, MESCHKE, LEVINE and JOHNSON, JJ., concur.

---

7. Chapter 10 is entitled "New Educational Occupancies" and contains the same occupancy definition. *See* Section 10–1.4.1, N.F.P.A. 101 Life Safety Code (1991).

8. An identical provision is found in Chapter 10. *See* Section 10–1.4.3, N.F.P.A. 101 Life Safety Code (1991).

9. What appears to be an inconsistency in our holding today is justified as consistent with the obvious intent of the amendment, which was to make the compulsory education law or laws more lenient and more accommodating to home school families. To construe the amendment as making it more difficult for parents to teach

their own children in their own homes would be contrary to that intent or objective.

The testimony given before the House and Senate Committees on Education during the proposal of the amendment as legislation, by government officials and home school supporters alike, is illustrative of the intent to ease the home school situation in North Dakota at that time. "This is an enormous improvement over the present system. This bill has a sunset clause which makes it effective for a period of four years. It is a trial period; it will demonstrate a compassion for the intolerance of a position shared by a small minority of the people in this state." *Hearings on H.B. No. 1421 Before the House Committee on Education,* (1989) (statement of Rep. Ulmer). "We feel comfortable with this bill; it is a starting point and will give parents the freedom of choice." *Id.* (statement of Sen. O'Connell). "Members of the House

Education Committee, adoption of House Bill 1421 would encourage the cooperation of the public and private school sectors.... [I]t would recognize the sincerely held religious beliefs of many parents." *Id.* (statement of Solicitor General Vukelic). "Engrossed HB 1421 is a compromise bill which will help ease tensions and hopefully lay a foundation for a working relationship between home schoolers and the state." *Id.* (statement of Rev. Birst).