# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-2119

———————

Bruce Roger Mills, individually and    *
on behalf of those similarly situated,   *
       *

     Plaintiff - Appellant,     *   Appeal from the United States
       *   District Court for the
  v.         *   District of North Dakota.
       *

City of Grand Forks,     *
       *

     Defendant - Appellee.   *

———————

Submitted: March 9, 2010
Filed: July 27, 2010

———————

Before RILEY, Chief Judge,[1] BRIGHT, and JOHN R. GIBSON, Circuit Judges.

———————

BRIGHT, Circuit Judge.

Bruce Roger Mills brought a federal civil rights action under 42 U.S.C. § 1983 against the City of Grand Forks ("City"), claiming that the City, fining him for a traffic violation under a city ordinance, with the fine exceeding the amount of money authorized under North Dakota state law, violated various federal constitutional rights. He claims violations of due process of law, equal protection under the law, and to be

———————————————

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

free from excessive fines. The district court[2] entered a judgment of dismissal on the pleadings under Fed. R. Civ. P. 12(c). Mills appeals. We affirm because the complaint fails to state any federal constitutional violation.

## I. Background

In 2004, a Grand Forks City police officer cited Mills with careless driving in violation of Grand Forks City Code § 08-0701. Mills pleaded not guilty and proceeded to trial. The municipal judge imposed a $150.00 traffic fine, a $15.00 pre-payment deposit for court costs, and a $1.00 administrative surcharge, all pursuant to the ordinances of the City.

Under North Dakota state law, a person found guilty of careless driving may be punished by a $30.00 fine. *See* N.D.C.C. § 39-06.1-06(4). Mills then appealed the City's fine against him to the state district court. That court affirmed the imposition of the fines and fees. Mills further appealed to the North Dakota Supreme Court. The North Dakota Supreme Court dismissed his appeal as not appealable under N.D.C.C. § 39-06.1-03(5). Order Dismissing Appeal, No. 20040283 (Dec. 1, 2004).

The City of Grand Forks was not the only municipality levying traffic fines in excess of the amount stated in the state's statutes. In 2008, the North Dakota Supreme Court considered whether the City of Fargo was imposing fines in excess of that allowed by North Dakota state law. *See Sauby v. City of Fargo*, 2008 ND 60, 747 N.W.2d 65. The North Dakota Supreme Court concluded the penalties for "noncriminal traffic offenses" could not exceed fines established for similar offenses under state law. *Sauby*, 2008 ND 60, ¶¶ 10, 13, 747 N.W.2d 65.

---

[2]The late Honorable Rodney S. Webb, United States Senior District Judge for the District of North Dakota.

One day after the North Dakota Supreme Court issued its decision in *Sauby*, the City of Grand Forks stopped charging fines in excess of the allowable amount under N.D.C.C. § 39-06.1-06. In March 2008, Mills filed a complaint against the City. As we have noted, Mills alleged in his complaint that the City violated his federal constitutional rights under: (1) the Due Process Clause of the Fourteenth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) the Excessive Fines Clause of the Eighth Amendment, as applied to the City through the Fourteenth Amendment.

The City moved for judgment on the pleadings, arguing Mills's allegations did not amount to federal constitutional violations. After holding a hearing, the district court granted the motion for judgment on the pleadings on all three of Mills's allegations of illegality. On appeal, Mills argues the district court erred as to each allegation.

## II. Standard of Review

This court reviews *de novo* a grant of a motion for judgment on the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002). The facts pleaded by the non-moving party must be accepted as true and all reasonable inferences from the pleadings should be taken in favor of the non-moving party. *Id.* The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record. *Porous Media Corp.*, 186 F.3d at 1079.

III. Due Process

The Due Process Clause of the Fourteenth Amendment ensures that states do not deprive individuals of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. "Under the rubric of substantive due process, the Due Process Clause protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Ganley v. Minneapolis Park & Recreation Bd.*, 491 F.3d 743, 749 (8th Cir. 2007) (internal quotations and citations omitted). A valid substantive due process claim requires that a plaintiff show (1) a right under the Fourteenth Amendment; and (2) the defendant deprived the plaintiff of that right. *Id.* "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases." *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) (quoting *Myers v. Scott County*, 868 F.2d 1017, 1019 (8th Cir. 1989)). A plaintiff must establish "the government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law." *Ganley*, 491 F.3d at 749 (citations omitted). "Truly irrational" conduct is "conscience shocking, in a constitutional sense." *Skokos v. Rhoades*, 440 F.3d 957, 962 (8th Cir. 2006) (citations omitted).

Mills's statements in his complaint fail to meet the standards required to show a due process violation. At the time the City cited Mills for careless driving, no binding legal precedent existed to show that the City's traffic fines violated state law, or that the City's conduct was "truly irrational."

In 1982, the North Dakota Attorney General considered the question: "[w]hether a home rule city may establish a fee for violations of speed limit ordinances where the fee exceeds the amount set forth in Section 39-06.1-06, N.D.C.C." N.D. Op. Atty. Gen. 82-62 (Aug. 19, 1982). In its opinion, the attorney general acknowledged that N.D.C.C. § 39-06.1-06 restricted fees for traffic offenses in violation of city ordinance. *Id.* But the attorney general determined that cities that

have adopted a home rule charter "shall supersede conflicting state law within the jurisdiction of the city." *Id.* The attorney general concluded that a home rule city has statutory power to regulate traffic and motor vehicle activities, and, under that authority, the city could impose greater fees than permitted under state law. *Id.* The attorney general reaffirmed this determination in an opinion stating that "[h]ome rule cities may supersede state law . . . as long as any of those powers is delineated in the city's home rule charter and implemented through ordinances." N.D. Op. Atty. Gen. 2001-F-07 (July 20, 2001). The City of Grand Forks is a home rule city.

In North Dakota, an attorney general's opinion serves as controlling law until it is superseded by a judicial decision. *See Fargo Women's Health Org. v. Schafer*, 18 F.3d 526, 530 (8th Cir. 1994) (citing *Johnson v. Baker*, 74 N.D. 244, 21 N.W.2d 355, 364 (1945) ("The Supreme Court of North Dakota has held that an Attorney General's opinion has the force and effect of law until a contrary ruling by a court.")).[3] Thus, these two attorney general's opinions served at the time to validate that a home rule city could establish fees for violations of traffic ordinances in excess of the fees set forth by state law. The City could rely on the attorney general's opinions when it created and enforced its fines structure.

The City contends that those attorney general opinions served as the applicable interpretation of the law for the City until 2008, when the North Dakota Supreme Court decided *Sauby*. Mills disagrees, asserting that the City could no longer rely on the attorney general opinions after 1991, when the North Dakota Supreme Court decided *City of Fargo v. Little Brown Jug*, 468 N.W.2d 392 (N.D. 1991). We examine that case.

---

[3]As we later explain, the term "court" does not refer to a state district court ruling from another district. *See infra* at 7.

In *Little Brown Jug*, the City of Fargo cited Little Brown Jug, an off-sale drinking establishment, with selling alcohol to minors. *Id.* at 393. The applicable state law treated this as a class A misdemeanor, while the city ordinance imposed a lesser penalty of a class B misdemeanor. *Id.* The North Dakota Supreme Court considered whether a home rule city could "enact an ordinance which defines an offense in language similar to state law, but provides for a lesser penalty than the state law." *Id.* at 394. The North Dakota Supreme Court held that the city could impose a different penalty from that imposed under state law, but limited its holding "to those situations in which the municipality authorizes imposition of up to the maximum allowable municipal penalty which is lesser than the state law penalty for an equivalent statute." *Id.* at 396. *Little Brown Jug* does not apply here.

*Little Brown Jug* raised the issue of whether a city may supersede state law as to *criminal* offenses and did not preclude the City from imposing traffic fines in excess of state statute. The limitations of the *Little Brown Jug* case received recognition as being inapplicable to the traffic fines at issue in its decision in *Sauby* when the North Dakota Supreme Court opinion stated: "This is the first time this Court has considered whether noncriminal municipal offenses may supersede state law." 2008 ND 60, ¶ 11, 747 N.W.2d 65. Consequently, we reject Mills's argument that the City should have known its noncriminal ordinances were invalid based on *Little Brown Jug* when the North Dakota Supreme Court had not considered that issue prior to *Sauby*.[4]

---

[4]Mills also claims the attorney general determined that *Little Brown Jug* precluded the City's fines system in a 1997 attorney general opinion. *See* N.D. Op. Atty. Gen. 97-L-155 (Sept. 26, 1997). But this attorney general opinion considered only the validity of a city ordinance which provided for the abatement and disposal of abandoned personal property. It did not consider the legality of a city's traffic ordinances. Further, the opinion's brief citation to *Little Brown Jug* referenced only that penalty provisions for *criminal* statutes must be clearly stated.

Mills next argues that the City could not rely on the attorney general opinions as of 2001, after a North Dakota state district court had issued an opinion in *City of Fargo v. Cose*, No. 09-01-K-1578 (Aug. 30, 2001). The Cass County district court in *Cose* held that the City of Fargo could not charge traffic fines in excess of those permitted under state law. Mills also cites two other decisions of the Cass County district court similarly determining as illegal the traffic fines imposed by the City of Fargo in excess of the fines contained in the state statutes.[5] These decisions would not bind another district court. *See United Accounts, Inc. v. Teladvantage, Inc.*, 524 N.W.2d 605, 606 (N.D. 1994) ("A trial court decision, particularly one in a different case and from another jurisdiction, is not authoritative."). These decisions did not apply to the City of Grand Forks nor were they precedent that the City needed to follow.

Although in its pleadings the City denies knowledge of these state district court decisions against the City of Fargo, notice would not make any difference. The Cass County rulings bound only the parties of that litigation and did not serve to overrule the reliance by the City on the still existing and still authoritative rulings by the North Dakota Attorney General.

Further, even if the City in fact violated state law, a mere violation of a state law does not give rise to a federal due process violation. *See Rivera v. Illinois*, 129 S. Ct. 1446, 1455 (2009) ("[E]rrors of state law do not automatically become violations of due process."); *see also Rozman v. City of Columbia Heights*, 268 F.3d 588, 593 (8th Cir. 2001) (en banc) ("A misreading of an ordinance and its consequent violation of state law do not give rise to an action for violation of substantive due process."). Mills in his pleadings fails to allege facts establishing that the City's conduct, even if in violation of state law, can be characterized as "truly irrational."

---

[5]North Dakota state district court opinions are not published in any official reporter.

Thus, no constitutional due process claim existed, and we affirm the district court's ruling on that issue.

IV.  Equal Protection

Mills next argues that he presented a viable cause of action based on his right to equal protection under the Fourteenth Amendment.

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Fourteenth Amendment ensures that states will govern their citizens impartially.  *Davis v. Bandemer*, 478 U.S. 109, 166 (1986).  But the Fourteenth Amendment does not guarantee that all persons must be dealt with in an identical manner.  *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966).

As a threshold matter, Mills must demonstrate that the City treated him differently than similarly situated citizens. *See Ganley*, 491 F.3d at 747.  Mills has not established the City treated other individuals who violated the traffic laws differently or selectively imposed a higher fine based on impermissible grounds.  *See Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005).  To the contrary, based on Mills's own pleadings, it appears that all drivers cited for careless driving received the same fine, and thus, the City treated similar offenders the same.

Moreover, because Mills is not a member of a protected class and his claim does not involve a fundamental right, his claim becomes subject to rational basis review.  *See Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998).  Under this standard, the plaintiff bears the burden of proof, and the statute bears a strong presumption of validity.  *Id.*  We reject Mills's challenge "if there is any reasonably conceivable state of facts that could provide a rational basis for the

classification." *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) (internal quotation omitted).

The district court concluded that Mills has failed to establish that the City lacked a rational basis for its actions. We agree. The City proffered several plausible reasons for its traffic fee schedule, including a legitimate interest in protecting the health and safety of the City's residents. Thus, no constitutional equal protection claim existed, and we affirm the district court's ruling on that issue.

## V. Excessive Fines

Mills finally argues the court erred in granting judgment on the pleadings because he presented a viable cause of action based on a violation of his right to be free from excessive fines under the Eighth and Fourteenth Amendments.

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII, § 1. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). For excessive fine claims, a plaintiff must show: (1) gross disproportionality; and (2) the disproportionality is of such a level that the punishment is more criminal than the crime. *United States v. Dodge Caravan*, 387 F.3d 758, 763 (8th Cir. 2004).

Mills contends that when a city imposes a fine that is greater than that allowed by state law, that fine is an "excessive fine." But we have determined that the City did not clearly violate state law when it fined Mills. Mills does not show that the City's fines were grossly disproportionate in a constitutional sense.

Mills's citation asserted careless driving in travelling between 55 and 60 miles per hour within the City of Grand Forks. Mills does not dispute that he committed the offense of careless driving and that the City has an interest in protecting against unsafe drivers. On its face, the fine for Mills's careless driving does not appear unreasonable or excessive.

## VI. Conclusion

Mills's claims of federal constitutional violations against him by the City lack merit. Accordingly, we affirm. Each party will bear its own costs on this appeal.

_____