# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-2630

_____

| | | |
|---|---|---|
| Bennie Rozman, doing business as Lynde Investment Company, | * | |
| | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| Susan Rodriguez, Sherri Boniarczyk, | * | |
| | * | |
| Intervenor Plaintiff, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| City of Columbia Heights, Joseph | * | [PUBLISHED] |
| Sturdevant, Walt Fehst, Meg Jones, | * | |
| Robert W. Ruettimann, Charles Kewatt, | * | |
| Lowell G. Demars, Matt D. Field, | * | |
| Gary Gorman, Rollin Goldsberry, | * | |
| | * | |
| Defendants/Appellees. | * | |

_____

Submitted: July 10, 2001
Filed: October 11, 2001

_____

Before WOLLMAN, Chief Judge, BRIGHT, McMILLIAN, BOWMAN, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, MURPHY, and BYE, Circuit Judges.

_____

PER CURIAM.

This opinion follows an en banc hearing held on July 10, 2001. Bennie Rozman ("Rozman") appealed the district court's grant of summary judgment to the City of Columbia Heights ("City") denying Rozman's constitutional and other claims made following the City's revocation of his rental licenses for a number of apartment buildings Rozman owned in the City. A panel of this court affirmed the district court in <u>Rozman v. City of Columbia Heights</u>, 220 F.3d 864 (8th Cir. 2000). On January 17, 2001, the court granted Rozman's petition for rehearing en banc and vacated the panel opinion. On rehearing en banc, we affirm the district court.

I.     BACKGROUND

The panel opinion stated the underlying facts as follows:

The City of Columbia Heights requires owners of residential rental property to obtain rental licenses before they may rent their properties to tenants. Rental property owners must then renew these licenses annually. . . . Since the annual inspection requirement has been in effect, City practice has been to schedule a date for rental apartment inspection with the landlord, and require that landlords notify their tenants that the City intends to conduct the inspection. The inspections routinely coincide with the annual renewal of each rental property's rental license.

. . . .

Rozman complied with the City's annual inspection program until 1996, at which time his concerns about the constitutionality of the program motivated him to refuse to perform the landlord's expected role in the City's inspection program. Rozman informed the City that he would neither give notice to his tenants of the upcoming inspection, nor would he grant access to any of the rental units without a showing that the City

-2-

had either the tenant's consent to enter his or her apartment or a search warrant. The City then sent a letter to Rozman threatening to refuse to renew his license. . . . [T]he [City] Council voted, on March 10, 1997, to revoke Rozman's rental licenses due to his refusal to schedule the required annual inspection of the rental units.

Id. at 865-66.

After hearing argument in this matter and considering the briefs, the en banc court affirms the judgment of the district court and adopts the panel opinion. We summarize and amplify the panel opinion.

II.    DISCUSSION

A.    Rozman's Claims

In the district court, Rozman claimed in count one that the City deprived him of his property interest in his rental licenses without due process of law in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments. The district court determined that the City did not act arbitrarily or capriciously when it revoked Rozman's licenses because he refused to notify his tenants of an upcoming inspection. We affirm because the City may constitutionally require landlords to notify their tenants of an upcoming inspection. Also, Rozman's relief under § 1983 fails because the City did not deprive him of any constitutional right, privilege, or immunity. We amplify this determination in our discussion below.

In count two, Rozman claimed that the City violated his Fourth Amendment rights when it entered the tenants' apartments without their permission. We affirm this ruling and agree with the district court that Rozman lacked standing to assert his tenants' rights.

-3-

In count three, Rozman claimed that the City violated the Equal Protection Clause of the Fourteenth Amendment and violated 42 U.S.C. § 1985(3) when it revoked his rental licences without cause. The district court determined that Rozman's Equal Protection claim failed because he did not establish facts sufficient for a disparate treatment claim. We affirm because the district court's interpretation of the Code means that the City had a constitutionally permissible reason to revoke Rozman's licenses—namely, that he refused to notify his tenants of the upcoming inspection.

In counts four through eight, Rozman asserted state law claims. The district court declined to exercise supplemental jurisdiction over these claims. We also decline to assert jurisdiction over Rozman's state law claims inasmuch as his federal claims have been properly dismissed.

Under count nine, Rozman argued that three sections of the City's Code are unconstitutional, both facially and as applied. The district court interpreted the City Code to be constitutional and determined that Rozman had no standing to challenge the other Code sections. First, as to § 5A.606, we agree with the district court that Rozman lacked standing to challenge the provision because it applies to occupants only, not to owners such as Rozman.

Second, regarding City Code § 5A.603, the district court disposed of Rozman's claim by interpreting the provision so that it met constitutional muster. In particular, the district court determined that no person may refuse to consent to an inspection when the inspector has a valid search warrant. We affirm because the City may constitutionally require landlords to notify their tenants of an upcoming inspection. As to § 5A.301, we agree with the district court that Rozman lacked standing to claim that the notice requirement violated the tenants' rights because he cannot assert the rights of his tenants.

B.     Rehearing Argument

Oral argument focused on (1) the City's reason for revoking Rozman's licenses; (2) his substantive due process claim; and (3) whether Rozman was obligated to attempt to obtain his tenants' consent. Rozman claimed that his refusal to afford the City access to his tenants' apartments constituted the basis for the non-renewal of the licenses. Additionally, Rozman argued that he had no right to grant access to individual tenant's apartments because consent belonged to the individual tenants. The City's resolution stated the reasons for the non-renewal of the licenses as:

> 2.     That as of FEBRUARY 12, 1997, LYNDE INVESTMENTS has refused to schedule the required annual inspection of the rental units.
>
> 3.     Based upon said information presented by the Enforcement Officer, the following conditions and violations of the City's Housing Maintenance Code and Licensing Rental Units were found to exist, to-wit:
>
> > A.     FAILURE TO ALLOW ANNUAL INSPECTION OF ALL RENTAL UNITS LOCATED AT . . .

App. of Appellant at 36.

Regardless of the conflicting factual claim surrounding the events preceding the revocation of the licenses, there is no dispute that Rozman refused to schedule the inspections. As we said in the panel opinion, the City may constitutionally require the landlord to notify tenants of the City inspection. Rozman, 220 F.3d at 868. Because this requirement is not an irrational act, Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104-05 (8th Cir. 1992), we determine the requirement does not violate substantive due process.

During oral argument, counsel for the City emphasized that there are two requirements for an annual inspection. First, the landlord must notify the tenants of the inspection. Second, the landlord must obtain consent from the tenants to conduct the inspection.

On the other hand, Rozman argued that notification and obtaining consent to inspect amounts to a single requirement of obtaining the tenants' consent. He maintained that constitutionally he cannot be forced or required to obtain those consents.

The district court did not approve of the City's assertion regarding the tenants' consent. The district court did not specifically address the question of whether Rozman, in scheduling inspections, needs to obtain, or at least ascertain, whether the tenants consent to the inspection. As the district court stated: "Plaintiff admits that it refused to provide notice to its tenants of upcoming maintenance inspections, as the Code requires. Plaintiff's failure to comply with the Code's requirements justified the revocation of its licenses, and the City's actions in revoking the licenses were not arbitrary and capricious." Add. at 6. Thus, the district court relied on the failure to give notice as a violation of the ordinance without ruling on the matter of consent.

In its construction of the ordinance, the district court further stated:

> Although it is difficult to discern, plaintiff also seems to be arguing that the notice requirement is unconstitutional because it makes the landlord liable for the tenants' exercise of their constitutional right to refuse consent. Section 5A.301 requires the landlord to give notice of an impending inspection to its tenants, and according to plaintiff also in effect requires the landlord to consent to the inspections in place of the tenants. If a tenant, after receiving notice, refuses to give his or her consent to the inspection, the landlord may be in violation of § 5A.603 if the landlord subsequently refuses to allow entry into the tenant's apartment. However, as explained above with respect to plaintiff's

-6-

challenge to § 5A.603, the landlord cannot violate § 5A.603 unless he refuses to provide access to inspectors in the face of a valid search warrant. Such a requirement complies with Camara [v. Municipal Court of the City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)] and is constitutional.

Add. at 11.

For purposes of summary judgment, we will assume that the City initially refused renewal of the real estate licenses based on Rozman's failure to notify and obtain the consent of his tenants, at least where the tenants were amenable to inspection upon request. The City's Code does not specifically address this notification/consent requirement. See § 5A.301(1).[1] As we have observed, the district court construed the ordinance as requiring a valid search warrant to enter the tenants' apartments without consent.

---

[1]City Code § 5A.301(1) provides in its entirety:

The City Manager and his/her designated agents, as the Building Official who shall administer and enforce the provisions of this ordinance, may enter for the purpose of inspection, any rental dwelling (whether it be standing alone or as a unit in a larger complex or units), or premises, upon twenty-four (24) hours notice to the owner, occupant, manager, or person in charge of the rental dwelling or premises. Inspection shall be conducted during reasonble [sic] hours, and upon request the Building Official shall present evidence of his/her official capacity to the owner, occupant or person in charge of a dwelling unit sought to be inspected. With regard to owned occupied single family dwelling units, the Building Official shall have the authority to enter onto the premises, during reasonable hours, for inspection of the exterior of the building.

Add. at 19.

However, the City's requirement that the owner obtain consent from the tenants for an inspection represents the City's construction of the ordinance. That construction may or may not be correct and as previously stated, the district court did not decide this issue. We need not resolve that construction to decide this case. A misreading of an ordinance and its consequent violation of state law do not give rise to an action for violation of substantive due process. Bituminous Materials, Inc. v. Rice County, Minn., 126 F.3d 1068, 1070 (8th Cir. 1997); Chesterfield Dev. Corp., 963 F.2d at 1105; Myers v. Scott County, 868 F.2d 1017, 1018 (8th Cir. 1989). In sum, misinterpretation or misapplication of the City Code does not give rise to a federal substantive due process claim.

Moreover, even if the ordinance required the owner in scheduling the inspection to obtain the consent of willing tenants, we cannot say such requirement necessarily offends the Due Process Clause. Rozman has cited no authority to make out a substantive due process violation, i.e., by showing that a governmental power was exercised arbitrarily and oppressively. See County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). The government action must be arbitrary in the constitutional sense. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 129 (1992).

We have said that "the theory of substantive due process is properly reserved for truly egregious and extraordinary cases." Chesterfield Dev. Corp., 963 F.2d at 1105 (quoting Myers, 868 F.2d at 1019). Here, the construction of the City ordinance does not clearly establish any constitutional violation, even assuming that such construction of the Code by the City is correct.

While the action of the City towards Rozman in revoking his real estate licenses in 1997 may not have complied with the provisions of the law as it may ultimately be interpreted, that action certainly did not rise to the level of a constitutional violation of substantive due process.

-8-

We express no opinion as to whether under state law the ordinance in question can require Rozman to obtain his tenants' consent to inspection. Such issue and its possible constitutional ramifications are for the state courts to interpret in the first instance.

III.    CONCLUSION

The district court's granting of summary judgment is affirmed. No costs are awarded on appeal.

MORRIS SHEPPARD ARNOLD, Circuit Judge, with whom BOWMAN and BYE, Circuit Judges, join, dissenting.

I respectfully suggest that the court has incorrectly described Mr. Rozman's substantive due process claim. Mr. Rozman claimed that his substantive due process rights were violated when the City revoked his license for refusing to allow the City to enter his tenants' units to inspect them. On summary judgment, the district court found that the City revoked Mr. Rozman's license because he failed to notify his tenants of an upcoming inspection, and a panel of our court approved that holding. *See Rozman v. City of Columbia Heights*, 220 F.3d 864 (8th Cir. 2000).

In the first place, the City directs our attention to no provision of the housing code that requires landlords to notify tenants of inspections. But the main difficulty that I see here is that the City itself stated that it revoked Mr. Rozman's license for a "failure to allow annual inspection," which clearly implies that the City believed that Mr. Rozman had some affirmative duty to give inspectors access to his tenants' apartments. As Mr. Rozman correctly points out, this requires him to do something that he cannot legally do because he has no right to possession of the relevant units. That right belongs to the tenants because they own a leasehold in those premises.

In my opinion, therefore, Mr. Rozman has at the very least produced enough evidence to survive summary judgment on the question of what the City's motive was for revoking his license. Furthermore, if the City's motive for revoking the license was what Mr. Rozman says it was, I think that his substantive due process rights were violated because the City has conditioned a license on a landlord's commission of a tort or a crime (trespassing on a tenant's property) or on the commission of an impossible act (giving a permission that the landlord has no power to give). It would be difficult to think of something more arbitrary than requiring a person to do the impossible; such a requirement is a quintessential example of the use of governmental power "as an instrument of oppression." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

I therefore respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-